981 F.2d 261
 142 L.R.R.M. (BNA) 2150, 61 USLW 2451,
123 Lab.Cas. P 10,473
 MONROE AUTO EQUIPMENT COMPANY, Plaintiff-Appellant,
v.
INTERNATIONAL UNION, UNITED AUTOMOTIVE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW),
MONROE AUTO EQUIPMENT COMPANY, UNIT OF
LOCAL 878, Defendant-Appellee.
 No. 92-1044.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 10, 1992.
Decided Dec. 14, 1992.
 
 Carl E. Johnson (argued), James R. Beyer (briefed), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, Anthony V. Trogan, Jr., Adam J. Baker, Weisman, Trogan, Young & Schloss, Birmingham, MI, for plaintiff-appellant.
 Ralph O. Jones (argued, briefed), Associate General Counsel, Detroit, MI, for defendant-appellee.
 Before KEITH and DAVID A. NELSON, Circuit Judges, and LIVELY, Senior Circuit Judge.
 LIVELY, Senior Circuit Judge.
 
 
 1
 This is an appeal by an employer from a district court judgment enforcing a labor arbitrator's award. The grievance contested dismissal of an employee for violation of the employer's policy prohibiting possession of illegal drugs in the workplace or being under the influence of such drugs while at work. The arbitrator held that the employer had not proven that the employee was impaired or was under the influence of drugs, and ordered him reinstated.
 
 I.
 
 2
 The plaintiff, Monroe Auto Equipment Company (Monroe) filed this action against International Union, United Automotive, Aerospace and Agricultural Implement Workers of America (UAW). Monroe sought to vacate and set aside an arbitration award rendered under the collective bargaining agreement between the parties. The UAW filed a counterclaim for enforcement of the arbitrator's award. The district court granted the defendant's summary judgment motion and awarded the defendant its costs and attorney fees.
 
 A.
 
 3
 Monroe is a manufacturer of shock absorbers and struts for cars and trucks. It is a party to a collective bargaining agreement (Agreement) with the UAW.
 
 
 4
 Monroe instituted an Alcohol and Drug Abuse Program policy statement in August 1985, which provided for disciplinary action up to discharge of any employee found to be under the influence of alcohol or drugs on company property or on company time. The policy statement was amended in November 1987 to provide for discharge of employees for using illegal drugs while off the job. This statement provided, in part, "Off-The-Job, Illegal Drug Use which could adversely affect an employee's job performance or which could jeopardize the safety of other employees, the public, or company equipment is proper cause for administrative or disciplinary action up to and including termination of employment."
 
 
 5
 In 1988 Monroe promulgated work rules, one of which prohibited being under the influence of alcohol or controlled substances while on company property. The previously adopted policy statement had defined "under the influence" as follows:
 
 
 6
 For purposes of this policy, "under the influence" means that the person is affected by a drug or alcohol, or the combination thereof, in a detectable manner. The symptoms of influence are not necessarily confined to those consistent with misbehavior, nor limited to obvious impairment of physical or mental ability, such as slurred speech or difficulty in maintaining balance. A determination of "influence" may be established by a professional opinion, a scientifically valid test, and in certain cases, such as alcohol, by a layperson's opinion.
 
 
 7
 Finally, in May 1989 Monroe promulgated a Corporate Policy Statement on a Drug-Free Workplace that included the following:
 
 
 8
 Monroe Auto Equipment Company has a vital interest in maintaining a safe, healthful, and productive work environment in order to protect our employees, property, safety, and efficiency of operations. Therefore, it is the policy of the Company to take immediate disciplinary action, up to and including discharge, of any employee who engages in the use or possession of illegal drugs or the use of alcohol in the workplace. This also includes being "under the influence" of any illegal drug or alcohol used prior to reporting to the workplace.
 
 B.
 
 9
 David Rafko was a Monroe mechanic represented by the UAW. Rafko's job consisted mainly of the installation of experimental ride control products on cars. He drove test cars occasionally, but spent most of his time under automobiles installing equipment.
 
 
 10
 In August 1989, Monroe received an anonymous letter stating that Rafko and another employee were trafficking in drugs at work. Monroe conducted an investigation and Rafko was interviewed on Thursday, October 5, 1989. He denied dealing drugs, but did admit using marijuana during the previous weekend. Rafko then signed a drug-testing consent form. Rafko's October 5 urine specimen was positive for carboxy THC, a metabolite of marijuana, at a level of 242 ng/ml. Rafko was terminated for illegal drug use and for being under the influence of drugs in violation of Monroe's work rules and policies.
 
 
 11
 Rafko and the UAW filed a grievance. The UAW stipulated that Rafko's drug tests were accurate. The arbitrator found that Monroe was advised that the test level constituted being under the influence of marijuana and that Rafko admitted he had smoked marijuana the night before he was tested. The arbitrator also noted that company witnesses admitted that Rafko had never been observed to be under the influence of drugs or found to have performed his work unsatisfactorily. One supervisor testified, however, that Rafko was disorganized at times, and Rafko admitted that he tended to tire easily when he smoked marijuana. The employee of Monroe's parent corporation who conducted the investigation conceded that he could not tell if Rafko was under the influence of a drug when he interviewed him on October 5.
 
 
 12
 Monroe's expert witness, Dr. James Hayden, a consultant on drugs and toxicology matters, described the effects of marijuana to include loss of judgment, inhibition, time perception, and motor coordination. Dr. Hayden stated that under current views of his profession between 60 and 100 ng/ml of THC in the urine would indicate being under the influence of marijuana. The witness conceded, however, that there is no legal definition or standard for determining when a person is under the influence of marijuana as there is for being under the influence of alcohol. He also testified that no studies had defined the difference between being "under the influence" and being "impaired." Noting that Rafko's test level was far above suggested levels both for being under the influence and being impaired, Dr. Hayden expressed the opinion that Rafko was under the influence of marijuana when tested.
 
 II.
 
 13
 The parties stipulated that three issues were presented to the arbitrator for decision. The first two issues related to alleged violations by Monroe of the National Labor Relations Act of 1947, as amended (LMRA) in handling Rafko's case, and the third concerned whether Rafko was discharged for "just cause."
 
 
 14
 First, the UAW alleged that Monroe had refused to bargain over its drug and alcohol policies. The arbitrator made a credibility finding that Monroe had distributed its drug policy statements to the union and that the union had had an opportunity to challenge the policies during their most recent negotiations, prior to implementation of the policies, but had failed to do so. Thus, the UAW waived any right to contend that the policies were implemented in violation of the LMRA. Although the UAW has not directly contested this ruling by the arbitrator, it continues to argue that there is some significance to the fact that the policy statements and work rules were never formally incorporated into the Agreement.
 
 
 15
 The second issue concerned Rafko's claim that he was entitled to be represented at the October 5th confrontation by the local union president or another member on a bargaining committee list. Rafko was actually represented by a local union vice-president. The arbitrator found no violation, inasmuch as the local president was involved in the investigation, and Rafko received adequate representation from the vice-president. The UAW has not contested this procedural ruling on appeal.
 
 
 16
 With respect to the third issue, whether Monroe discharged Rafko for just cause, the arbitrator looked first to the question of whether the drug abuse policies found to apply to this case are compatible with the Agreement. The arbitrator concluded that the off-the-job provisions are compatible with the agreement only to the extent that off-duty behavior affects the operation of the employer's business. As a general rule, an employer's right to discipline employees is confined to work-related matters. When seeking to justify discipline for off-duty conduct, an employer has the burden of proving a connection between facts developed in a particular case and a detrimental effect on its business. That connection and effect must be reasonable and discernible "such as could logically be expected to cause some result in the employer's affairs."
 
 
 17
 The arbitrator found that Monroe was justified in requiring Rafko to submit to the drug urine test, but stated that drug use does not in itself justify discharge. The Monroe policy with respect to off-premises drug use recognizes this limitation, the arbitrator found, by providing discipline only for such use "which could adversely affect an employee's job performance or which could jeopardize the safety of other employees, the public, or Company property."
 
 
 18
 After reviewing Dr. Hayden's testimony the arbitrator concluded that Monroe had discharged Rafko without just cause, stating:
 
 
 19
 The Company has relied on scientific evidence that is less than conclusive as to whether the Grievant's off-duty use of marijuana actually interfered with his job performance. The evidence does not suffice, either to demonstrate that discharge was warranted by terms of Company policy, or that there was just cause for such action.
 
 
 20
 The award required Monroe to reinstate Rafko without loss of seniority and remanded the matter to the parties to determine "penalties or compensation, if any." Instead, Monroe filed a timely action in district court pursuant to § 301 of the LMRA, 29 U.S.C. § 185, and appealed to this court following the district court's entry of summary judgment for the UAW affirming the decision and enforcing the award.
 
 III.
 A.
 
 21
 Monroe presents three issues on appeal. First, it contends that the arbitrator's award does not draw its essence from the Agreement and that the arbitrator exceeded his authority. Second, Monroe asserts that the award violates public policy by ordering reinstatement and return to the workplace of an employee who admitted using illegal drugs. Third, Monroe argues that the district court erred in awarding attorney fees to the UAW.
 
 B.
 
 22
 As in other cases where the district court grants summary judgment, we review a grant of summary judgment in labor arbitration cases de novo. Dallas & Mavis Forwarding Co. v. General Drivers, Warehousemen & Helpers, Local Union No. 89, 972 F.2d 129, 133 (6th Cir.1992). Nevertheless, our scope of review is extremely limited. As the Supreme Court made clear in the Steelworkers Trilogy,[1] when parties to a collective bargaining agreement provide for arbitration of grievances and disputes they have bargained for an arbitrator's decision, not the decision of a court.
 
 
 23
 The Supreme Court recently reaffirmed and explained this cardinal rule in United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987). Writing for a unanimous Court in Misco, Justice White stated:
 
 
 24
 The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations. These statutes reflect a decided preference for private settlement of labor disputes without the intervention of government: The Labor Management Relations Act of 1947, 61 Stat. 154, 29 U.S.C. § 173(d), provides that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." The courts have jurisdiction to enforce collective-bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute. Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept. Courts thus do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts. To resolve disputes about the application of a collective-bargaining agreement, an arbitrator must find facts and a court may not reject those findings simply because it disagrees with them. The same is true of the arbitrator's interpretation of the contract. The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the ground that the arbitrator misread the contract.
 
 
 25
 Id. at 37-38, 108 S.Ct. at 370-71 (citations omitted). Defining further the paramount position to be accorded in an arbitrator's award, Justice White wrote:
 
 
 26
 As the Court has said, the arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice. But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision.
 
 
 27
 Id. at 38, 108 S.Ct. at 371.
 
 IV.
 
 28
 With these principles in mind, we turn to the first issue--whether the arbitrator's award drew its essence from the Agreement and whether the arbitrator exceeded his authority.
 
 A.
 
 29
 Only if we conclude that the arbitrator was not even "arguably construing or applying the contract" in this case or was not "acting within the scope of his authority" may we refuse to enforce the award. Misco, 484 U.S. at 38, 108 S.Ct. at 371. Monroe contends that the arbitrator did exceed his authority by refusing to apply the definition of "under the influence" contained in the Agreement, and substituting for it his own definition. Further, Monroe argues, the arbitrator based his award on the conclusion that Monroe had failed to prove that Rafko was under the influence of marijuana as erroneously defined by the arbitrator. Thus, the award did not draw its essence from the Agreement. By ignoring the work rules, which defined "under the influence" in clear and unambiguous terms, Monroe asserts, the arbitrator imposed a burden of proof on Monroe to meet a standard of certainty not provided for by the Agreement.
 
 
 30
 The work rules permit Monroe to discharge an employee who is under the influence on company property and provide that one way to establish the "under the influence" condition is by "a scientifically valid test" or "a professional opinion." It is Monroe's position that Dr. Hayden's testimony satisfied this standard, and that the arbitrator had no authority to ignore these provisions and base his award on his own conception of the requirements for proving an employee to be under the influence of drugs.
 
 
 31
 At oral argument Monroe emphasized the fact that the drug policy provides for discharge of an employee whose condition could adversely affect job performance or jeopardize the safety of other employees, etc., whereas the arbitrator based his determination upon a finding that Monroe's scientific evidence was insufficient to show that Rafko's off-duty use of marijuana actually interfered with his job performance. This amounted to application of a standard not contained in any of the drug policy documents, and was beyond the arbitrator's authority, according to Monroe.
 
 
 32
 Monroe also disputes the district court's basis for upholding the award. The district court interpreted the arbitrator's decision as resting the award upon a determination that the definition of "under the influence" contained in the work rules is "too vague to enforce." The court stated that under general contract principles vague language cannot be given effect unless both parties to a contract agree on its meaning. Because there are no clearly established standards for ascertaining whether a person is under the influence of marijuana, the court held, in effect, that Monroe could not discharge an employee for that rules infraction without setting a specific test result or other definite criterion for determining the condition.
 
 B.
 
 33
 The UAW responds that the arbitrator did not ignore the language or refuse to apply explicit terms of the Agreement. Rather, he acted within his authority by interpreting the agreement and finding that Monroe did not carry its burden of proving that Rafko was in fact under the influence of marijuana on October 5, 1989. He reached this conclusion, the UAW asserts, not by departing from the Agreement, but after considering Dr. Hayden's testimony in light of the definition contained in the rules.
 
 
 34
 The arbitrator's ultimate conclusion that Rafko's discharge could not be sustained was based on his finding that Monroe's proof fell short of satisfying the very definitions contained in the rules. The UAW maintains that the arbitrator's decision recognized that Monroe may make a determination of whether an employee is under the influence of drugs in reliance upon a scientifically valid test or a professional opinion. The arbitrator found, however, that Dr. Hayden's testimony revealed that there is no consensus in the scientific community with respect to a valid test for determining when a person is under the influence of marijuana. These very uncertainties led the arbitrator to conclude, according to the UAW, that Dr. Hayden's professional opinion on the subject was not determinative. Thus, the UAW argues, the arbitrator, though agreeing that Monroe is free to base its determination that an employee is under the influence on a valid scientific test or a professional opinion, it has the burden of proving that the test is valid and the opinion is properly supported.
 
 
 35
 The UAW seeks to defend the district court's opinion by arguing that use of the word "may" in reference to determining whether a person is under the influence of drugs on the basis of a scientific test or professional opinion precludes finding that such a test or opinion automatically establishes that condition.
 
 
 36
 Finally, the UAW contends, Monroe had the burden of proving that a discharge based upon such reliance was for "just cause."
 
 V.
 
 37
 Article II of the Agreement gives Monroe the exclusive right to determine the conduct of its business, including the right to discipline and discharge employees for just cause. Given the arbitrator's finding that the UAW waived its right to bargain about Monroe's drug policy and work rules when it had an opportunity to do so, we believe the arbitrator correctly found that the policy and rules apply to Rafko's case even though they were never formally incorporated into the Agreement.
 
 A.
 
 38
 The authority to promulgate and enforce the drug policy and work rules derives from Monroe's Article II power to discipline for just cause. Because Rafko used marijuana while off duty and away from the workplace, the only basis upon which the company could discipline him for that use was for being under the influence of the drug while on company property. The arbitrator clearly recognized the definition of "under the influence" contained in the policy statement and sought to apply it to Rafko's case.
 
 
 39
 The arbitrator's statement that the evidence did not establish that Rafko's off-duty use of marijuana actually interfered with his job performance followed a recitation of the fact that Monroe's witnesses testified they observed no abnormal behavior or any indication that Rafko did not properly perform his work on October 5, 1989. Then, immediately after making the observation concerning actual interference with job performance, the arbitrator stated: "The evidence does not suffice, either to demonstrate that discharge was warranted by terms of Company policy, or that there was just cause for such action."
 
 
 40
 Properly read, the arbitrator's decision states that there were two possible bases upon which Monroe could have discharged Rafko for being under the influence of marijuana: either that he was actually impaired to the extent that it interfered with his work or that he was impaired to the extent that his impairment could adversely affect job performance or jeopardize the safety of other employees. If he had been visibly impaired, that would have been just cause for discharge, without more. Because he was not visibly impaired, however, Monroe proceeded on the basis of a professional opinion that the test results established that Rafko's job performance could have been impaired. Only if the professional opinion were bolstered by a degree of certainty found lacking in this instance would a discharge in reliance on the opinion be discipline for just cause.
 
 B.
 
 41
 There is clearly room for disagreement with the arbitrator's decision and award. Nevertheless, his decision demonstrates that he was interpreting the drug policy in light of the employer's right to discharge only for just cause, and we may not review the merits of the award. Monroe's policy provides a definition of "under the influence" that is confined to a condition where "the person is affected by a drug or alcohol, or the combination thereof, in a detectable manner." The policy then states that symptoms of influence such as misbehavior or obvious impairment of physical or mental ability exhibited by such signs as slurred speech or difficulty in maintaining balance need not be present for a person to be affected in a detectable manner. The person may also be found to be affected by drugs or alcohol in a detectable manner if such "influence" is established by a scientifically valid test or a professional opinion.
 
 
 42
 We do not agree with the district court's conclusion that the arbitrator denied application of the drug policy to Rafko because the policy was too vague to enforce. We find nothing in the arbitrator's decision or award to support such a reading. Nevertheless, we agree with the district court that the award must be enforced. The award draws its essence from the agreement, and the arbitrator did not exceed his authority or impose "his own brand of industrial justice." Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. at 597, 80 S.Ct. at 1361.
 
 
 43
 We have held that an award may be vacated only when the arbitrator "refuse[s] to apply explicit terms of the agreement" or renders an award in "direct contradiction of unambiguous terms of the agreement." International Ass'n of Machinists v. Lourdes Hospital, Inc., 958 F.2d 154, 156 (6th Cir.1992). Similarly, we stated in Dallas & Mavis Forwarding Co., 972 F.2d at 134 that "[a]n award fails to derive its essence from the agreement when (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on 'general considerations of fairness and equity' instead of the exact terms of the agreement." (citations omitted).
 
 
 44
 In our opinion, the award in this case transgressed none of these prohibitions. Specifically, the arbitrator did not impose an "additional requirement not expressly provided for in the agreement" when he observed that Monroe's proof fell short of establishing that Rafko's off-duty use of marijuana actually interfered with his job performance. He recognized Monroe's right to discipline an employee for such use of a drug as could adversely affect job performance, but found from the evidence that Monroe had failed to establish either that Rafko's use of marijuana the night before the test could have had this effect or that it actually did so. Whether correct or not, that finding is not subject to review by a court.
 
 VI.
 
 45
 Monroe also argues that the award should be vacated and set aside because it violates public policy. The Supreme Court stated in W.R. Grace & Co. v. Rubber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 2183, 76 L.Ed.2d 298 (1983), that "a court may not enforce a collective-bargaining agreement that is contrary to public policy." Applying this principle to review of an arbitrator's award, the Court stated that if a contract, as interpreted by the arbitrator, violates "some explicit public policy," the Court would refrain from enforcing it. Id. Further defining the reach of this character of review, the Court cautioned that the public policy "must be well defined and dominant" and be discovered "by reference to the laws and legal precedents and not from general considerations of supposed public interests." Id. (quoting Muschany v. United States, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945).
 
 
 46
 The Supreme Court interpreted W.R. Grace in Misco, making it clear that the Court did not "otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." 484 U.S. at 43, 108 S.Ct. at 373. The award must create an explicit conflict with a public policy established by laws and legal precedents; it cannot be set aside on the basis of common sense or on speculation by a court as to public policy. Id. at 43-44, 108 S.Ct. at 373-74. We applied these rules to reverse a district court's judgment vacating an arbitration award on public policy grounds in Interstate Brands v. Teamsters Local Union No. 135, 909 F.2d 885, 892-94 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991).
 
 
 47
 The district court correctly found that the award in this case did not violate public policy. Monroe did not identify law or legal precedents which indicate that the award violated a well defined and dominant public policy. As this court explained in Shelby County Health Care v. A.F.S.C.M.E. Local 1733, 967 F.2d 1091, 1095 (6th Cir.1992), "it is not sufficient that the 'grievant's conduct for which he was disciplined violated some policy or law' rather, the relevant issue is whether the arbitrator's award 'requiring the reinstatement of the grievance ... violated some explicit public policy.' " (quoting Interstate Brands, 909 F.2d at 893). The arbitrator did not find that Rafko was impaired or intoxicated while performing his duties. This fact distinguishes the cases that Monroe contends support its view. See e.g., Delta Air Lines v. Air Line Pilots Ass'n Int'l, 861 F.2d 665 (11th Cir.1988) (vacating the award because flying an airplane while intoxicated violated public policy), cert. denied, 493 U.S. 871, 110 S.Ct. 201, 107 L.Ed.2d 154 (1989). The present case is closer to Interstate Brands where this court stated that "it does not follow ... that any arbitration award reinstating an employee discharged for being intoxicated while off-duty, or arrested for off-duty possession of controlled substances may never be enforced without violating the public policy exception of arbitration awards." Interstate Brands, 909 F.2d at 893.
 
 VII.
 
 48
 The district court awarded attorney fees to the UAW without any discussion of its reasoning. The LMRA has no fee-shifting provision. The UAW seeks to support the award of attorney fees here on the basis that since arbitration is the preferred method of settling labor disputes and the courts are severely limited in their review of arbitration awards, attorney fees should be awarded against a party that unsuccessfully seeks to set aside an award. This general deterrence argument is unavailing.
 
 
 49
 A district court's award or denial of attorney fees is reviewed for abuse of discretion. Black v. Ryder/P.I.E. Nationwide, Inc., 970 F.2d 1461, 1472 (6th Cir.1992). The general rule in the United States is that a prevailing party may not ordinarily recover attorney fees in the absence of a statute or enforceable contract providing for a fee award. Shimman v. International Union of Operating Engineers, Local 18, 744 F.2d 1226, 1229 (6th Cir.1984) (en banc), cert. denied, 469 U.S. 1215, 105 S.Ct. 1191, 84 L.Ed.2d 337 (1985). Neither party contends there is any specific statutory authority or contract right in the present case. The only exception to the American rule that could possibly apply to this case is the "bad faith" exception. We can find no basis for applying it. This court in Ray A. Scharer and Co. v. Plabell Rubber Products, 858 F.2d 317, 320 (6th Cir.1988), explained that exception by stating that the "normal [American] rule does not apply, however, where a party or counsel have acted in bad faith in the instigation or conduct of litigation, and in those circumstances, the court has the inherent authority to assess an award of attorney's fees against either the litigant or his attorney." (citations omitted). The court went on to say that "[a]n award of attorney's fees ... is an extreme sanction, and must be limited to truly egregious cases of misconduct." Id. (citation omitted).
 
 
 50
 The district court abused its discretion by awarding attorney fees because it cannot be said that Monroe acted in bad faith in bringing this action. Monroe has consistently acknowledged the courts' limited scope of review but has maintained that this arbitration award should be vacated because the award did not draw its essence from the agreement and that it violated public policy. Misco does not preclude either of these arguments and in fact Monroe made a good faith effort to argue that the award was similar to the award in Lourdes that this court vacated because an arbitrator cannot "refuse to apply explicit terms of the agreement" or render an award in "direct contradiction of unambiguous terms of the agreement." Lourdes, 958 F.2d at 156. Monroe contended throughout the proceedings that the award failed to apply explicit terms of the agreement. Neither this argument nor Monroe's public policy argument can be found to have been made in bad faith.
 
 
 51
 These facts distinguish the present case from the cases cited by the UAW in which attorney fee awards were approved. For example, in Dreis & Krump Mfg. v. International Ass'n of Machinists & Aerospace Workers, 802 F.2d 247, 249 (7th Cir.1986), the court awarded fees after concluding that the "company had no ground for challenging the [arbitrator's] decision in court; also, it filed this suit after the statute of limitations had run." The Eighth Circuit awarded attorney fees in UAW v. United Farm Tools Inc., 762 F.2d 76 (1985), because the court concluded that since United Farm did not even act to have the award set aside when the UAW brought an action to enforce the award, United Farm unjustifiably refused to comply with the award. Monroe did not act with such lack of justification. Monroe has contended from the beginning that the award did not draw its essence from the contract and its position clearly has an arguable basis in law. It cannot be said that the suit was brought "in bad faith to harass rather than to win." Chrysler Motors v. International Union, 959 F.2d 685, 689 (7th Cir.1992), cert. denied, --- U.S. ----, 113 S.Ct. 304, 121 L.Ed.2d 227 (1992). Finding no basis for a determination of bad faith, we reverse the award of attorney fees.
 
 
 52
 The judgment of the district court is affirmed in part and reversed in part. The award of the arbitrator is enforced. No costs are allowed on appeal; each party will bear its own costs.
 
 
 53
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 54
 Although the employer's work rules did authorize termination of employment for off-the-job use of illegal drugs where such use could adversely affect the employee's job performance, it is undisputed that David Rafko was discharged because of drugs found in his system at a time when he was on the job. In the circumstances presented here, I believe, the effect of off-duty drug usage on job performance is simply irrelevant.
 
 
 55
 A laboratory test of a urine specimen furnished by Mr. Rafko during working hours showed a marijuana metabolite concentration of 242 nanograms per milliliter. In the professional opinion of the employer's highly qualified expert--an opinion that stands totally uncontradicted--this scientifically valid test established that Mr. Rafko was "under the influence" of marijuana while on company property and on company time.
 
 
 56
 The work rule that controls in such a situation is unambiguous. "Employee[s] will be subject to discharge," it says, for "[b]eing under the influence of alcohol or drugs on Company property or on Company time." Standard Practice Instruction IV, § 17, Part I F, effective November 12, 1987. The rule provides elsewhere that "[a] determination of 'influence' may be established by a professional opinion, a scientifically valid test, and, in certain cases, such as alcohol, by a layperson's opinion."
 
 
 57
 The arbitrator had no authority to amend the rule to say that an employee who has been shown--by an uncontested professional opinion based on a scientifically valid test--to be under the influence of illegal drugs while on company time is not subject to discharge without proof that the drugs could or did interfere with his job performance. Yet that is precisely what the arbitrator did, it seems to me; he added a "job performance" proviso that he was not entitled to add.
 
 
 58
 In so doing, I believe, the arbitrator refused to apply an explicit term of the work rules as written. Because the arbitrator's award thus fails to derive its essence from the agreement, it ought not to have been enforced. I am strengthened in this conclusion by the fact that the brand of industrial justice dispensed by the arbitrator is out of harmony, to say the least, with the well-defined public policy reflected in the nation's drug laws.
 
 
 
 [1]
 United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); United Steelworkers of America v. Warrior & Gulf Navig. Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); United Steelworkers of America v. American Mfgr. Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960)