**HUMILITY OF MARY HEALTH PARTNERS Plaintiff**

v.

**LOCAL 377 CHAUFFEURS, TEAMSTERS, WAREHOUSEMEN, AND HELPERS OF AMERICA**

No. 4:02 CV 02041.

United States District Court, N.D. Ohio.

Aug. 7, 2003.

Colleen C. Curran, John N. Childs, Brennan, Manna & Diamond, Akron, OH, Devin J. Oddo, Janik & Dorman, Cleveland, OH, for Plaintiff/Counter–Defendant.

.Robert S. Moore, Canfield, OH, for Defendant/Counter–Claimant.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the parties' cross-motions for summary judgment. (Dkt. # 12; Dkt. # 14.)

### I. FACTUAL HISTORY

The Plaintiff, Humility of Mary Health Partners ("HM"), operates a health care center located in Youngstown, Ohio. (Dkt. # 1 ¶ 1.) The Defendant, Local No. 377, Chauffeurs, Teamsters, Warehousemen and Helpers of America ("the Union"), is the collective bargaining representative for certain hourly employees of HM. (Dkt. # 4 ¶ 1.) HM and the Union are parties to a collective bargaining agreement ("CBA") setting forth the terms and conditions of employment at HM.[1] (Dkt. # 1 ¶ 4; Dkt. # 4 ¶¶ 1, 4; Dkt. # 13 at 2; Dkt. # 14 at 3.)

*The grievance and arbitration procedures*

Article XI of the CBA establishes a three-step grievance procedure for resolving "any disagreement between HM and the Union concerning the interpretation and/or application of, or compliance with, the provisions of the CBA." (Dkt. # 1 ¶ 5 & Ex. A at Art. IX. § 1; Dkt. # 4 ¶ 1; Dkt. # 14 at 3.)[2] The first step requires an aggrieved employee to discuss the matter with his/her immediate supervisor. (CBA, Art. IX § 2.) Should the employee and the supervisor fail to resolve the matter, they must indicate this result in writing. (CBA, Art. IX § 2.) In the event of such a failure,

the employee may proceed to Step II of the grievance procedure by detailing in writing the circumstances giving rise to the grievance. (CBA, Art. IX § 2.) Step II requires a meeting between the employee and the next highest supervisor.[3] (CBA, Art. IX § 2.) Should the parties fail to resolve the matter at the Step II stage, the aggrieved party may appeal in writing to HM's Vice President of Human Resources. (CBA, Art. IX § 2.) At the Step III stage, the Vice President of Human Resources must meet with the employee and, or the Union and promptly issue a decision. (CBA, Art. IX § 2.)

Following the issuance of a Step III decision, the aggrieved party may request an arbitral hearing. (Dkt. # 1 ¶ 6; Dkt. # 4 ¶ 1; Dkt. # 13 at 2; CBA, Art. IX § 3a.) Upon the issuance of a request for arbitration, the parties proceed to jointly select one arbitrator from a standing nine-member panel of arbitrators. (CBA, Art. IX §§ 3b & 4.) The arbitrator must hold a hearing and issue a written decision presenting findings of fact, as well as a determination regarding the existence/nonexistence of a breach of the CBA. (CBA, Art. IX § 4.)

*The Union's request to arbitrate*

Following a long-standing dispute regarding HM's purported failure to deduct union dues from employee's wages, the Union initiated the grievance procedure specifically alleging that HM failed to properly deduct union dues, initiation fees and / or service fees (collectively hereinafter "dues") from the paychecks of employees as required by Article II of CBA.[4]

---

**1.** The relevant CBA governs the period May 10, 2001 through May 24, 2004. (Dkt. # 1 ¶ 4 & Ex. A; Dkt. # 4, Def.'s Answer and Countercl. ¶ 4.)

**2.** All citations to the CBA arise from either Dkt. # 1, Ex. A, or Dkt. # 14, Ex. C. The Court hereinafter shall refer collectively to said docket provisions as the "CBA."

**3.** In addition, all grievances alleged by the Union are initiated at the Step II stage. (CBA, Art. IX § 2.)

**4.** Article II, section 4, of the CBA provides:

[HM] agrees to deduct monthly union dues, initiation fees and/or service fees in whatever sum is authorized by the Union from the

(Dkt. # 1 ¶ 7; Dkt. # 4 ¶ 1; Dkt. # 13 at 2; Dkt. # 14 at 3.) The parties proceeded through the three-step arbitration procedure—to no avail. (Dkt. # 14 at 4.) Consequently, the Union requested arbitration. (Dkt. # 1 ¶ 7; Dkt. # 4 ¶ 1; Dkt. # 14 at 4.)

*The hearings and Award*

The arbitrator held hearings on February 21, 2002 and July 11, 2002. *See* (Dkt. # 14, Ex. A (hereinafter the "Award") at 1 n. 2.) In an Opinion and Award dated September 10, 2002 ("the Award"), the arbitrator partially sustained the Union's grievance and ordered HM to pay directly to the Union the amount, if any, by which it underpaid the Union for dues during the months of June 2001 through August 2002.[5] (Dkt. # 13 at 3–8; Dkt. # 14 at 4; Award at 4, 17–22.) However, the arbitrator did not award an exact monetary sum to the Union. Rather, the Award established a procedure for determining the amount of outstanding dues.[6] This procedure specifically required: (1) the Union to verify the amounts outstanding and to submit all billings to HM; (2) HM to review the billings, acknowledge in writing those that it deemed correct, as well as specifically challenge in writing those billings that it deemed to be erroneous (i.e. as a result of miscalculation, the employee no longer employed, etc.); and (3) the parties

to invoke the continuing jurisdiction of the arbitrator should they fail to resolve any challenged billing. (Dkt. # 13 at 8; Award at 21–23.)

HM thereafter filed with this Court an application to vacate the Award. (Dkt.# 1.) The instant motions ensued.

## II. STANDARD OF REVIEW

Summary judgment is proper where there lacks any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering such a motion, the court must review all of the evidence in the record. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legiti-

---

pay of employees upon receipt of a voluntary written authorization form executed by the employee for that purpose. The authorization form shall be supplied by the Union. The Union shall notify [HM] of any change in monthly dues, initiation fees or service fees in writing at least thirty (30) days in advance of such day the change becomes effective.

(CBA, Art. II § 4.)

5. The Award additionally addressed: (1) the arbitrability of the grievance; (2) the time period that HM failed to deduct dues; and (3) the parties' compliance with the grievance procedure. During the hearing, the parties stipulated as to the arbitrability of the griev-

ance, *see* (Award at 1 n. 2, 11, 19); therefore, the Court shall not address the issue. Likewise, the parties do not contest before this Court the arbitrator's conclusions regarding the time period in question, or the Union's compliance with the grievance procedure. Accordingly, the Court shall refrain from addressing such issues.

6. The parties' requested that the arbitrator resolve the matter in a "wholesale," rather than "retail" manner. *See* (Award at 16.) Otherwise stated, the parties requested a finding as to class-wide liability, rather than a case-case/employee-employee determination as to the exact amount of outstanding dues.

mate inferences from the facts are jury functions, not those of a judge .... The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *accord Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 556–57 n. 7 (6th Cir.2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548 (quoting FED. R. CIV. P. 56(c)). The movant meets this burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 609 (6th Cir.2002) (quoting *Celotex*, 477 U.S. at 324–25, 106 S.Ct. 2548). The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

"The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir.1989) (quoting *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505). "A mere scintilla of

evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 250, 106 S.Ct. 2505.

When addressing a motion for summary judgment in the context of a request to vacate an arbitral award, the Court must acknowledge that federal labor policy strongly favors arbitration. *See United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).[7] Therefore, the Court's review of an arbitration award is "one of the narrowest standards of review in all of American jurisprudence." *Tennessee Valley Auth. v. Tennessee Valley Trades & Labor Council*, 184 F.3d 510, 514 (6th Cir.1999) (quoting *Lattimer–Stevens Co. v. United Steelworkers of Am., Dist. 27, Sub–Dist. 5*, 913 F.2d 1166, 1169 (6th Cir.1990)).

Indeed, the Court may not overturn an arbitrator's decision "as long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (internal quotations omitted). An arbitrator's award fails to "draw its essence" from the collective bargaining agreement when the award: (1) conflicts with express terms of the agreement; (2) imposes additional requirements not expressly provided for it the agreement; (3) is not rationally supported by or derived from the agreement; or (4) is based on general considerations of fairness and equity instead of the exact terms of the agreement. *See Eisenmann*

7. Hereinafter the "Steelworkers Trilogy."

*Corp. v. Sheet Metal Workers Int'l Assoc. Local No. 24,* 323 F.3d 375, 380 (6th Cir. 2003) (citations and quotations omitted). In addition, courts may upset an arbitration award if it is rendered in "manifest disregard of the law," *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros,* 70 F.3d 418, 421 (6th Cir.1995), or if it is contrary to a well-defined and dominant public policy, *see Eastern Associated Coal Corp. v. United Mine Workers of Amer., Dist. 17,* 531 U.S. 57, 62, 121 S.Ct. 462, 148 L.Ed.2d 354 (2000). However, "[i]f an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball Players Ass'n v. Garvey,* 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (internal quotations omitted).

## III. LAW AND ANALYSIS

### A. Overview

HM advances two principal assertions in support of its application to vacate the Award: (1) the relief violates pertinent provisions of 29 U.S.C. § 186, as well as the public policy manifested in said statute; and (2) the Award fails to draw its essence from the CBA in that it conflicts with the express terms of the CBA's checkoff dues provision (Article II). (Dkt. # 14; Dkt. # 16.) The Court shall address each assertion seriatim.

### B. 29 U.S.C. § 186

■ HM asserts that the anti-bribery provisions of 29 U.S.C. § 186 preclude it from directly paying back-dues to the Union. Title 29 of the United States Code, section 186 provides, in pertinent part:

(a) It shall be unlawful for any employer or association of employers or any person who acts as a labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value—

(1) to any representative of any of his employees who are employed in an industry affecting commerce; or

(2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce; or

(3) to any employee or group or committee of employees of such employer employed in an industry affecting commerce in excess of their normal compensation for the purpose of causing such employee or group or committee directly or indirectly to influence any other employees in the exercise of the right to organize and bargain collectively through representatives of their own choosing; or

(4) to any officer or employee of a labor organization engaged in an industry affecting commerce with intent to influence him in respect to any of his actions, decisions, or duties as a representative of employees or as such officer or employee of such labor organization.

(b)(1) It shall be unlawful for any person to request, demand, receive, or agree to receive or accept, any payment, loan, or delivery of any money or thing of value prohibited by subsection (a) of this section.

(2) It shall be unlawful for any labor organization, or any person acting as an officer, agent, representative, or employee of such labor organization, to demand or accept from the operator of any motor vehicle (as defined in section 13102 of Title 49) employed in the transportation of property in commerce, or the

employer of any such operator, any money or other thing of value payable to such organization or to an officer, agent, representative or employee thereof as a fee or charge for the unloading, or in connection with the unloading, of the cargo of such vehicle: *Provided,* That nothing in this paragraph shall be construed to make unlawful any payment by employer to any of his employees as compensation for their services as employees.

29 U.S.C. § 186(a), (b). Congress enacted the statute "to prevent employers from tampering with the loyalty of union officials, and disloyal union officials from levying tribute upon employers." *United States v. Ryan,* 225 F.2d 417, 426 (2d Cir.1955) (L.Hand, C.J., dissenting), *rev'd on other grounds,* 350 U.S. 299, 76 S.Ct. 400, 100 L.Ed. 335 (1956). "Section 186 as a whole is concerned not only with the dues checkoff system but with any financial transaction between employers and unions, which can be corrupting." *United Bhd. of Carpenters and Joiners of America, Dresden Local No. 267 v. Ohio Carpenters Health and Welfare Fund,* 926 F.2d 550 (6th Cir.1991). The court must vacate an arbitration award that results in a violation of Section 186.[8] *See Jackson Purchase Rural Elec. Cooperative Ass'n v. Local Union 816, Int'l Bhd. of Elec. Workers,* 646 F.2d 264, 267–68 (6th Cir.1981).

■ At first blush, Section 186 prohibits any direct payment by an employer to a union. It follows *a fortiori* that an arbitrator cannot order an employer to make direct payments to the union.

However, Congress enumerated a series of exceptions to Section 186's proscription against direct employer to union payments. Of particular significance, Section 186(c)(2) provides, in pertinent part:

(c) The provisions of this section shall not be applicable ... (2) with respect to the payment or delivery of any money or other thing of value in satisfaction of a judgment of any court or a decision or award of an arbitrator or impartial chairman or in compromise, adjustment, settlement, or release of any claim, complaint, grievance, or dispute in the absence of fraud or duress.

*See* 29 U.S.C. § 186(c).

Federal courts applying Section 186(c)(2) have interpreted the exception to encompass arbitration awards that require the employer to directly pay the union for past violations of checkoff dues agreements. *See, e.g., Washington Post v. Washington–Baltimore Newspaper Guild, Local 35,* 787 F.2d 604, 607 (D.C.Cir.1986) (declining to vacate an arbitral award requiring the employer to pay back-dues directly to the union); *United Steelworkers of America v. United States Gypsum Co.,* 492 F.2d 713, 734 (5th Cir.1974) ("Nor can we say that the arbitrator's decision requiring the company to pay the award without recoupment from its employees is not within his remedial authority."); *White v. National Football League,* 836 F.Supp. 1458, 1483 (D.Minn.1993) ("Congress did not intend that the general prohibition prevent a union or employee representative from vindicating its legal rights as to an employer, and thus enacted the settlement exception ...."). This Court finds the foregoing authority well-reasoned and adopts the rationale provided therein; that is—Section 186(c)(2) affords an arbitrator with the power to issue an award requiring an employer to make monetary payments directly to the union for prior breaches of a valid checkoff dues provision.

HM nevertheless relies on indirect authority from foreign jurisdictions in an at-

---

8. In the interest of convenience, the Court shall utilize the term "section" to refer to the provisions of title 29 of the United States Code unless otherwise noted.

tempt to limit the arbitrator's power to award direct monetary payments. The United States Court of Appeals for the Second Circuit has addressed the Section 186(c) exceptions and has held, "[W]henever some other provision of [Section 186(c) ] provides a more particularized exception, the transaction must satisfy the requirements of that other exception to be exempt." *Int'l Longshoremen's Ass'n, v. Seatrain Lines, Inc.,* 326 F.2d 916, 920 (2nd Cir.1964). Section 186(c)(4) expressly excepts checkoff dues from general the proscription of Section 186 and provides, in pertinent part:

> (4) with respect to money deducted from the wages of employees in payment of membership dues in a labor organization: Provided, That the employer has received from each employee, on whose account such deductions are made, a written assignment which shall not be irrevocable for a period of more than one year, or beyond the termination date of the applicable collective agreement, whichever occurs sooner.

29 U.S.C. § 186(c)(4). HM contends that Section 186(c)(4) permits the employer to directly pay the Union only those dues "directed from the wages of employees." Consequently, HM argues that the Award violates Section 186 because the Award requires a direct payment from HM, rather than increased deductions from the employees' wages.

HM misplaces its reliance on *Seatrain Lines* and Section 186(c)(4). First, *Seatrain Lines* addressed a factual scenario starkly unrelated to the case *sub judice.* In *Seatrain Lines,* an employer agreed during contract negotiations to pay a certain percentage of revenue to a union in compensation for diminished dues collection as a result of the employer's lowering of wages. The issue before the court concerned whether Section 186 allowed for such direct payments *in lieu* of checkoff dues. The court proceeded to analyze the

issue pursuant to Section 186(c)(4) and determined that the checkoff dues exception "provid[ed] the exclusive method by which employers may contribute to the general purpose funds of union and as making payments in lieu of checkoff ...." *Seatrain Lines,* 326 F.2d at 920. The court ultimately concluded that Section 186 prohibited the employer's direct payment because "there [was] no contention that the proposed payment [met] the requirements of [Section 186(c)(4) ]." *Seatrain Lines,* 326 F.2d at 920.

In contrast to *Seatrain Lines,* this is not a case where the employer seeks to directly pay the union a sum certain in lieu of deducting dues from wages. Rather, the instant scenario presents a straightforward interpretation of Section 182(c)(2) as it is undisputed that the direct payment at issue arises from an arbitral award. As the *Seatrain Lines* court acknowledged, its decision did "not [ ] attempt to define in detail the area in which [Section 186(c)(2) ] affords immunity." *Seatrain Lines,* 326 F.2d at 920. Therefore, *Seatrain Lines* is of little utility in analyzing the factual predicate of this case.

To the extent HM relies on the *Seatrain Lines'* statutory construction of the Section 186(c) exceptions, this Court respectfully joins the majority of cases that limit such interpretation to the particular facts of that case. *See, e.g., Washington Post,* 787 F.2d at 609 n. 5 ("[*Seatrain Lines* ] did not directly present the question of how to resolve alleged conflicts between [Section 186(c)(2) ] and [Section 186(c)(4) ]. Read in this context we do not find this perhaps overbroad *Seatrain* comment dispositive of our case."). This Court further joins the majority of cases that interpret the Section 186(c)(2) and Section 186(c)(4) exceptions as separate and distinct. *Id.* Simply, the Court's examination of the statute reveals that Section 186(c)(4) addresses the man-

ner in which an employer and union may undertake the process of deducting dues from wages during the routine course of the contractual relationship, whereas Section 186(c)(2) addresses the manner in which to remedy any breach of the CBA, including a breach of the checkoff dues provision. While the Court acknowledges the concern of the *Seatrain Lines* court that "the proscriptive effect of the statute [could be] nullified, [if] every payment by an employer to a union could be characterized as a settlement of claim," *Seatrain Lines*, 326 F.2d at 920, this concern is obviated in the instant case as it is undisputed that HM directly shall issue payment to the Union pursuant to a validly issued arbitral award. Moreover, the Award greatly diminishes the opportunity for malfeasance by implementing a cooperative payment process and retaining the arbitrator's continuing jurisdiction over the actual payment of back-dues. (Award at 23.) Accordingly, the Court interprets Section 186(c)(2) to expressly permit direct employer to union payments pursuant to an arbitrator's award. The court thereby rejects HM's contention that Section 186 compels vacating the Award.[9]

### C. The Award and the "Essence of the Agreement"

HM next asserts that the Court must vacate the Award because the mandated relief fails to draw its essence from the CBA. (Dkt. # 14 at 10; Dkt. # 16 at 4–9.) As discussed *supra*, an arbitrator's award fails to draws its essence from the agreement when: (1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not rationally supported by or derived from the agreement; or (4) it is based on "general considerations of fairness and equity" instead of the exact terms agreement. *See Eisenmann Corp.*, 323 F.3d at 380.

HM again challenges the direct payment provisions of the Award—in this instance alleging that the Award violates Article II of the CBA by requiring that HM pay compensation to the Union rather than increase future deductions from employees' wages. As the arbitrator acknowledged in the Award, Article II, section 4 of the CBA requires "monthly union dues, initiation fees and/ or service fees and whatever sum is authorized by the Union" to be taken "from the pay of the employee." (CBA, Article II, § 4); *see also* (Award at 13). HM contends that the direct payment mandated by the Award conflicts with this provision of the CBA.

HM's challenges to the arbitrator's direct payment remedy are without merit. An arbitrator has broad discretion in formulating remedies. *See Misco, Inc.*, 484 U.S. at 38, 108 S.Ct. 364. "If the language of the arbitrable contract is not explicit enough to bar the arbitrator's chosen remedy, the arbitrator's judgment will be respected on review." *AK Steel Corp. v. United Steelworkers of America*, 163 F.3d 403, 409 (6th Cir.1998) (citation omitted). Here, there lacks any conflict between the Award and the CBA because there lacks any specific provision in the CBA addressing the remedy for a breach of Article II. Rather, the general remedy provided for a

---

9. The Court necessarily rejects HM's contention that the Award violates the public policy against employer to union payments promoted in Section 186. *See* (Dkt. # 14 at 6.) *See, e.g., Shelby County Health Care Corp., v. Am. Federation of State, County and Municipal Employees, Local 1733*, 967 F.2d 1091, 1095 (1992) (citing *W.R. Grace & Co. v. Rub-* ber Workers, 461 U.S. 757, 766, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)) (holding that a court may refuse to enforce an arbitration award that violates public policy that is "well defined and dominant"). Section 186(c)(2) defines the public policy at issue and, as discussed herein, it specifically permits the payments mandated by the Award.

breach of any provision of the CBA is the three-step grievance procedure followed by arbitration. Hence, "it is the arbitrator's view of the facts and of the meaning of the contract that [the parties] have agreed to accept." *Misco, Inc.*, 484 U.S. at 37, 108 S.Ct. 364; *see also Eberhard Foods, Inc. v. Handy*, 868 F.2d 890, 892 (6th Cir.1989) ("There is nothing, therefore, in the CBA or work rules which expressly limits or removes from the arbitrator the authority to review the remedy in this case. *Misco, supra*, says that in such an instance, the courts must defer to the arbitrator's construction of the contract.") (Citation omitted). HM cannot now complain that it is unsatisfied with the bargain that it willingly entered into with the Union. Consequently, the Court shall leave the arbitrator's remedy undisturbed unless the arbitrator abandoned his contractual authority.

The CBA explicitly grants the arbitrator authority to fashion remedies, providing: "The decision of the arbitrator shall be in writing, shall include findings of fact, and shall state which Article(s) and Section(s), if any, of the Agreement have been violated, or which statutes, rules or regulations, if any, have been violated, *provide for a remedy if required*, and designate the prevailing party in the proceeding." (Award, Art. IX § 4) (emphasis supplied). The CBA limits the arbitrator's interpretative and remedial authority, as follows: "The arbitrator shall not modify, rescind, amend or add to the terms of the collective bargaining agreement of the parties, or substitute his/her judgment for the business and operational judgment of the Health Center." (Award, Art. IX § 4.)

The arbitrator described his remedy as follows: "The remedy provides for the arbitral equivalent of a declaratory judgment that [HM] must abide by the terms of Article II, Sections 4 & 5. It further provides a process which exact amounts owing to the Union for the fifteen months in question may be established." (Award at 15.) The arbitrator proceeded to issue the following findings in support of the remedy: (1) arbitration authority established that a direct payment by HM to the Union served as the proper remedy, (Award at 17); (2) "it will be difficult [for the Union] to make up many of the deductions, given the turnover of employees which is endemic to the nursing home industry," (Award at 18); (3) "it would be Draconian to have 15 months dues deducted from [the employees'] paychecks in the month following the issuance of this Opinion and Award," (Award at 18); and (4) "[b]etter to have the financial burden imposed where the potential fault lies, i.e. with the Employer." (Award at 18).

HM contends that the arbitrator's findings indicate an "infidelity" to the CBA thereby compelling the Court to vacate the Award. (Dkt. # 16 at 8.) HM challenges, however, only one of the arbitrator's findings—that relating to the alleged burden of deducting significantly increased dues from the employees' paychecks in the month following the issuance of the Award. HM specifically asserts that it entered into a side letter agreement with the Union whereby the parties agreed that the maximum amount of dues to be taken out of any employee's wage during one pay period would not exceed fifty dollars. (Dkt. # 16 at 6.) Therefore, HM argues that the arbitrator erred in finding that increased dues deductions would result in a "Draconian" remedy against the employees.

HM's argument misses the mark in several respects. First, HM fails to present any affirmative evidence of this purported side letter agreement. Assuming *arguendo*, the parties entered into such an agreement, the import of the agreement is of minimal import. The Court deems the arbitrator's ultimate conclusion consistent

with arbitral authority providing that the remedy for a failure to deduct union dues must be imposed on the employer, rather than the employees. *See Washington Post*, 787 F.2d at 607. Furthermore, the arbitrator's finding regarding the high turnover of HM employees necessarily supports an award requiring direct payment from HM, otherwise the Union may be unable to recover dues from employees who no longer receive wages from HM. Contrary to HM's assertions that the Award demonstrates the arbitrator's view of industrial justice, the Award presents an accurate account of the facts and law governing the grievance. It is not the arbitrator's view that "[b]etter to have the financial burden imposed where the potential fault lies"—with HM—rather, the facts and the law lead solely to that conclusion. Thus, the arbitrator's decision in this case draws its essence from the CBA between the parties and the enforcement of the Award does not violate Section 186.

Accordingly, the Plaintiff's Motion for Summary Judgment (Dkt.# 14) is **DENIED**.

### D. The Union's Motion for Summary Judgment

The Union has filed a counterclaim requesting: (1) the dismissal of the HM's application to vacate the Award; (2) the enforcement of the Award; (3) interest on the underpayment; and (4) attorney's fees. (Countercl. §§ 1–6.) To the extent the Union's motion for summary judgment on the counterclaim requests the Court to dismiss HM's application to vacate the Award and enforce the Award, said motion is **GRANTED**. However, the Court shall address separately the issue of interest on the underpayments and the request for attorney's fees.

### 1. Interest on Underpayments

Citing no precedent in support thereof, the Union seeks interest on HM's under-payments of back dues. This Court has previously awarded interest when an employer has breached its duty to pay into its employees' union fund. *See Van Drivers Union Local No. 392 v. Neal Moving & Storage*, 551 F.Supp. 429, 433 (N.D.Ohio 1982). In *Van Drivers*, this Court granted the plaintiff's motion for preliminary injunction enjoining the defendant from violating the terms of the collective bargaining agreement and ordered the defendant to pay all underpayments with interest. *See id.*

However, a key distinction separates the instant matter from *Van Drivers*. In *Van Drivers*, the union sought injunctive relief in the district court for the defendant's failure to comply with the collective bargaining agreement. To the contrary, the parties initiated the instant dispute before an arbitrator. By virtue of addressing the case in the first instance, the *Van Drivers* court had the opportunity to present findings of fact and conclusions of law whereas here, the Court's duty is to *review* the arbitrator's decision. *See Int'l Bhd. of Elec. Workers*, 879 F.2d at 209. Because the Award makes no mention of interest on the underpayments, there is nothing for this Court to review in that regard. *See Tennessee Valley Auth.*, 184 F.3d at 516 ("The district court's conclusion otherwise led it to substitute its own notions of industrial justice for that of the arbitrator. This result is problematic because proper resolution of employee grievances is a subject matter in which courts have little expertise.") (Citation omitted). Moreover, the arbitrator expressly retained continuing jurisdiction over the exact amounts of underpayments to be paid by HM through the remedial procedure established in the Award. Therefore, the issue of interest on the underpayments is best left to the arbitrator in the exercise of his continuing jurisdiction. Accordingly, the Union's re-

quest for interest on the underpayments is **DENIED**.[10]

### 2. Attorney's Fees and Costs

 The final issue before the Court addresses whether HM must pay the Union attorney's fees incurred in this proceeding. The Labor Management Provision Act lacks any fee-shifting provision. *Monroe Auto Equipment Co. v. UAW, Monroe Auto Equipment Co., Unit of Local 878,* 981 F.2d 261, 269 (6th Cir.1992). It is well-established that a prevailing party may not ordinarily recover attorney fees in the absence of a statute or enforceable contract providing for the fee award. *Shimman v. Int'l Union of Operating Engineers, Local 18,* 744 F.2d 1226, 1229 (6th Cir.1984).

Article IX, Section 5 of the CBA expressly provides that "the non-prevailing party in the arbitration proceeding shall pay all of the arbitrator's fees and expenses," and "the expenses of counsel shall be borne entirely, however, by the party utilizing counsel." (CBA, Art. IX § 5.) The CBA is silent as to whether the non-prevailing party must pay the attorney's fees in an civil action to vacate an arbitral award. Therefore, the issue is a matter of interpretation of the CBA that falls within the arbitrator's continuing jurisdiction or may serve as the subject of a separate grievance. Nevertheless, it is not for this Court to award attorney's fees in the absence of bad faith. *See Monroe Auto Equipment,* 981 F.2d at 269–270 (reaffirming that unless counsel has acted in bad faith in the investigation or conduct of the litigation, attorney's fees are inappropriate) (citation omitted). As there lacks any allegation that HM has acted in bad faith,

the Union's request for attorney fees ·is **DENIED**.[11]

### IV. CONCLUSION

For the foregoing reasons, the Court hereby orders that the Plaintiff's Motion for Summary Judgment (Dkt.# 14) is **DENIED**. The Court further orders that the Defendant's Motion for Summary Judgment (Dkt.# 12) is **GRANTED IN PART** and **DENIED IN PART**. The Defendant's requests for a dismissal of the Plaintiff's application to vacate the arbitral award and an enforcement of the arbitral award are **GRANTED**. The Defendant's requests for interest and attorney fees are **DENIED**.

**IT IS SO ORDERED.**

---

10. It of course follows that the Court's judgment does not have a preclusive effect should the arbitrator require HM to provide interest on the underpayments.

11. Again, the Court's judgment does not have a preclusive effect should the arbitrator interpret the CBA to require HM's payment of the Union's attorney fees incurred in this action.