MARTHA CRAIG DAUGHTREY, Circuit Judge,
dissenting.
Because my colleagues have reached the decision not to enforce the National Labor Relations Board’s order against defendant Allied Mechanical Services by ignoring both the evidence in the record and sound principles of administrative law, I respectfully dissent.
In BE & K Construction Co. v. NLRB, 536 U.S. 516, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002), the United States Supreme Court recognized that an employer’s First Amendment right to petition the courts might be infringed if lawsuits against unions filed by such employers were deemed to be unfair labor practices simply because those lawsuits proved to be unsuccessful. *496 Id. at 536, 122 S.Ct. 2390. Indeed, the Court noted that nothing in the text of the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, indicates that statutory restrictions on an employer’s interference with employee rights “must be read to reach all reasonably based but unsuccessful suits filed with a retaliatory purpose.” Id. (emphasis added). Notably, however, the Supreme Court did “not decide whether the Board may declare unlawful any unsuccessful but reasonably based suits that would not have been filed but for a motive to impose costs of the litigation process, regardless of the outcome, in retaliation for NLRA protected activity.” Id. at 536-37, 122 S.Ct. 2390.
Because the Court in BE & K Construction did not formulate the appropriate framework to be used in such challenges, on remand the Board exercised its discretion to do so on its own. Utilizing its expertise in matters of labor law, the Board held that employer-initiated lawsuits against unions violate the protections afforded by section 8(a)(1) of the NLRA, 29 U.S.C. § 158(a)(1), if the employer’s lawsuit against an employee union “lacks a reasonable basis and was brought with the requisite kind of retaliatory purpose.” BE & K Const. Co., 351 NLRB 451, 458 (2007). In this case, the majority does not disagree with the application of the Board’s framework; instead, my colleagues attempt to justify their decision to reverse the Board’s holding by reference to Allied Mechanical’s First Amendment rights and this court’s apparently supernatural ability to decipher precepts of the applicable substantive law. In doing so, the majority ignores salient facts in the record and dangerously subverts long-standing principles of administrative-law jurisprudence.
I. The Lawsuit Was Objectively Baseless
In August 1998, Allied Mechanical filed suit against two local unions and the unions’ international organizations, in essence challenging the decision by Local 7 of the Sheet Metal Workers International Association to deny job-targeting funds to Allied Mechanical on various jobs in western Michigan. The district court dismissed the complaint in its entirety, and a panel of this court affirmed that conclusion in a per curiam opinion. See Allied Mech. Servs., Inc. v. Local 337, et al., 221 F.3d 1333, 2000 WL 924594 (6th Cir.2000). The majority contends, however, that “[wjhile Allied may have lost in court, its claims [d]o not sink to the level that no reasonable litigant could have expected to succeed on the merits of the case.” However, a fair review of the record and a proper application of relevant legal principles establishes just the opposite: that the suit was purely and simply a sham.
A. Baseless Claims Against the International Union Organizations
Astoundingly, the majority declares that “although the organizational structure of the union left Allied Mechanical without hope of success against the uninvolved international unions, their inclusion in the complaint appears more like thorough law-yering and less like frivolity.” But this statement is a radical, internally inconsistent, and legally specious proposition. First, from a purely factual standpoint, Allied Mechanical’s inclusion of the international unions as defendants in the complaint is the height of frivolousness and an exemplar of how not to draft a complaint if one hopes to avoid sanctions under Rule 11 of the Federal Rules of Civil Procedure. Rule 11(b)(3) explicitly states that by signing a complaint and filing it with a federal court, an attorney certifies that “the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a rea *497 sonable opportunity for further investigation or discovery.” Here, however, Allied Mechanical is patently unable to make such assertions truthfully. For example, Allied Mechanical’s claims against the Sheet Metal International were dismissed by the district court because the complaint itself failed to indicate that any acts of Local 7 were undertaken as an agent of the international union.
Even more egregious and blatantly without factual basis were Allied Mechanical’s claims against the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry (UA). Indeed, Daniel Huizinga, Allied Mechanical’s co-owner, testified before an administrative law judge that he had absolutely “no personal knowledge” that the UA “authorized or approved any of the specific acts alleged in the Complaint,” and that no individual from Local 7 had ever told him “that officials of the UA had requested that they deny job-targeting funds to Allied Mechanical.” Furthermore, Huizinga admitted that he had no memory of ever asking Local 7 officials “whether UA Local 357 was coercing [them] to withhold job-targeting funds.” Despite that stark lack of any evidentiary support, Allied Mechanical did not hesitate to allege that the internationals were liable for the actions of the local unions.
As the majority itself asserts, Allied Mechanical was, both objectively and subjectively, “without hope of success against the uninvolved international unions.” I am at a complete loss to understand how the majority can acknowledge the hopelessness and baselessness of such claims and yet assert, without the slightest recognition of the inherent irony, that such pleading “appears more like thorough lawyer-ing.” “Thorough lawyering” does not now, and has never before, justified the advancement of claims without any factual or legal basis. Such actions smack not of thoroughness but of sanctionable misrepresentation.
B. Baseless Claims Against the Local Unions
Similarly, despite the majority’s claims to the contrary, Allied Mechanical had no hope of success on its equally baseless claims against the local union affiliates. Without question, litigants may seek to extend the reach of statutory and constitutional rights and responsibilities. As even the majority asserts, however, “There may exist baseless suits in which the plaintiff claims to be seeking an expansion of a legal theory and yet such an expansion is plainly and objectively foreclosed.” Although the majority concludes that “this is not such a case,” I view Allied’s attempt to haul the local unions into court as nothing other than the most thinly veiled attempt to extract precious time, energy, and funds from the locals.
The very fact that Allied Mechanical sought to use the NLRA’s prohibitions on secondary boycotts to prosecute the local unions proves the point. As we have recognized consistently, “[d]uring ... a secondary boycott, a union brings economic pressure to bear on a primary employer to do something the union wants ... by inducing a secondary employer doing business with the primary employer to bring economic pressure on the primary employer.” Shafer Redi-Mix, Inc. v. Chauffeurs, Teamsters & Helpers Local Union # 7, 643 F.3d 473, 477 (6th Cir.2011) (quoting F.A. Wilhelm Constr. Co. v. Ky. State Dist. Council of Carpenters, 293 F.3d 935, 938 (6th Cir.2002)) (internal quotation marks omitted) (emphasis added). Absolutely nothing in Allied Mechanical’s complaint against the local unions alleged, or even intimated, that those organizations brought any economic pressure whatever *498 on a “secondary employer” or neutral party. In fact, Allied Mechanical fails to allege that any threats or restraints were directed toward any entity other than Allied Mechanical itself.
Instead, Allied Mechanical argues “that Local 357 conducted an illegal secondary boycott by threatening or coercing Local 7 into ‘ceas[ing] doing business,’ 29 U.S.C. § 158(b)(4)(i)(B), with Allied Mechanical by withholding job-targeting funds.” However, Local 7 is not a “secondary employer” for purposes of this litigation. Rather, both Local 7 and Local 357 represent individual employees of the same company — Allied Mechanical. Allied Mechanical cannot simply redefine a secondary boycott as something it is not in order to twist the unambiguous meaning of a statute and then argue, perversely, that it is seeking a good-faith expansion of existing law. We would deem objectively baseless a claim by an apple farmer that he is entitled to subsidies allotted to growers of oranges because apples and oranges both are fruits. Similarly, Allied Mechanical’s claim that the local unions violated the secondary-boycott provisions of the NLRA because they allegedly engaged in concerted action against their primary employer is an effort to create a cause of action merely by the misuse of well-defined terms and should likewise be considered baseless.
Allied Mechanical’s breach-of-contract cause of action against Local 7 comes no closer to being a legitimate claim. Pursuant to Article X of the collective bargaining agreement between Allied Mechanical and Local 7, all disputes of contract interpretation are subject to a specific grievance framework. Allied Mechanical availed itself of that procedure regarding the Kalamazoo Red Cross job, presenting its argument through various stages until it was rejected unanimously by the National Joint Adjustment Board. Because that rejection was unanimous, the decision was “final and binding” on the parties.
Allied Mechanical nevertheless continues to insist before this panel that the decision reached at the final stage of the grievance procedure was incorrect. The parties to the labor contract bargained, however, not for a court adjudication of their dispute, but for settlement through a contractually defined grievance process that was allowed to run its course. Consequently, we could not now overturn the arbitration decision, even if we were convinced that serious error had been committed, “as long as the [grievance panel] is even arguably construing or applying the contract and acting within the scope of [its] authority.” United Paperworkers Int’l Union v. Misco, Inc., 484 U.S. 29, 38, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987).
As recognized in our June 2000 opinion affirming the district court’s dismissal of Allied Mechanical’s lawsuit against the various labor organizations:
[A]n award fails to derive its essence from a CBA [collective bargaining agreement] when it conflicts with express terms of a CBA; imposes additional requirements not expressly provided for in the CBA; is not rationally supported by or derived from the CBA; or is based upon “general considerations of fairness and equity,” rather than the exact terms of the CBA.
Allied Mech. Servs., Inc., 221 F.3d 1333, 2000 WL 924594, at *6 (citing Monroe Auto Equip. Co. v. Int’l Union, United Auto., Aerospace, and Agric. Implement Workers, 981 F.2d 261, 268 (6th Cir.1992)). None of those justifications for replacing the bargained-for adjudication of the contract dispute with a court decision are present in this matter.
Indeed, it is impossible for the arbitrator’s ruling regarding Local 7’s distribu *499 tion of job-targeting funds to conflict with the express terms of the parties’ contract because that agreement never once mentions the term “job-targeting funds” or even references such a concept. Ironically, to reach the result Allied Mechanical asks of this court, we would be required to create new contractual terms or resort to equitable principles not envisioned by the parties when they bargained for the specific grievance procedure employed here— exactly the type of judicial overreaching that federal arbitration and grievance-procedure precedents forbid. Given that prohibition, it is impossible for Allied Mechanical to set aside the “final and binding” decision of the National Joint Adjustment Board. Because no reasonable litigant thus could have expected to prevail on the breach-of-contract cause of action and obtain the relief requested in the complaint, Allied Mechanical’s claims in this regard are also objectively baseless.
II. Allied Mechanical’s Subjectively Retaliatory Lawsuit Against the Union Defendants
Even if Allied Mechanical’s lawsuit against the unions is deemed objectively baseless, the Board’s finding that the company committed an unfair labor practice by filing the action cannot be upheld unless the administrative record also contains substantial evidence in support of the Board’s conclusion that Allied Mechanical possessed a subjectively retaliatory motive in pursuing the course of action it did. As in almost any effort to divine subjective intent, it is difficult, if not impossible, to pinpoint testimony in which an alleged violator of a protective statute directly states a desire to contravene the dictates of the enacted legislation. Indeed, what is more often the case, an administrative or appellate record contains self-serving statements contradicting any implication of bias or retaliatory motive. Such is the situation here as well. During his testimony before the administrative law judge, for example, Daniel Huizinga maintained that prior disagreements with labor unions were irrelevant to the company’s litigation decision, even though Allied Mechanical’s complaint specifically referenced the fact that Local 357’s predecessor, Local 337, “has filed numerous unfair labor practice charges and engaged in mini-strikes and other activities in an attempt to disrupt and damage the business operations of [Allied Mechanical].”
Given the obvious motive for a party to the litigation to sanitize comments bearing on a crucial component of the litigation, agencies and courts are tasked with the responsibility of scrutinizing the records before them in an attempt to discern, from indirect evidence, the true intentions of sometimes bitter adversaries. In this case, the NLRB and the unions advanced three reasons for concluding that Allied Mechanical did indeed prosecute its court action with a motive to retaliate against the unions for engaging in protected activity. The company counters by separating the Board’s three stated bases for finding that Allied Mechanical harbored a retaliatory motive in filing its suit and then argues that each one, by itself, is insufficient to justify a subjective finding of retaliation. I reject such disaggregation and instead would analyze each of the unions’ arguments as integral parts of an overarching indictment of Allied Mechanical’s motives.
The Board and the unions first asserted that the presence of anti-union animus on the part of Allied Mechanical helps to justify the determination that the company possessed a retaliatory motive in filing its federal-court complaint. The majority gives credence, however, to Allied Mechanical’s argument that animosity between labor and management will almost always precede the filing of such a court action; *500 otherwise, the parties would have been able to reconcile their differences without resort to time-consuming, expensive litigation. The mere presence of anti-union animus thus cannot, according to Allied Mechanical, justify a finding of subjective baselessness. Moreover, contends the company, its longstanding collective bargaining agreement with Local 7 negates any implication that Allied Mechanical harbored ill will toward labor unions in general.
Although Allied Mechanical is correct that the mere existence of anti-union animus alone would seldom justify a finding that a company possessed an improper motive in filing a lawsuit against a labor union, additional factors are brought to bear in this dispute. The evidence of the tumultuous relationship between Allied Mechanical on one hand and the UA and Local 357 on the other lends great support to the Board’s conclusion that such animus should be considered an important factor in gauging the company’s retaliatory motivation in filing its 1998 lawsuit. It is undisputed that Local 357 (and its predecessor, Local 337), despite being recognized as the representative of Allied Mechanical’s pipe fitters, was unable to negotiate a collective bargaining agreement with the company from 1991 through the time of the filing of Allied Mechanical’s lawsuit in 1998. Indeed, John Huizinga, Allied Mechanical’s vice-president, was quoted as saying that he did not believe the company would ever sign such an agreement with Local 357. Moreover, the relationship between Allied Mechanical and the union was so fraught with continued bitterness and animosity that the Board, on numerous occasions, found that the company committed unfair labor practices against the union and the employees that Local 357 represented. In the absence of an outright admission by a company executive that the lawsuit was filed solely to retaliate against the unions for their protected activities, perhaps the most damning indirect evidence of such an improper motive was the claim by John Huizinga to a Local 357 officer that “[sjomeday, you guys are going to make a mistake over there and I’m going to get even with you.” The majority conveniently ignores this indication of retaliatory motive in its discussion, failing even to mention the context in which the comment was made. According to testimony before the administrative law judge, Huiz-inga had just finished complaining to the union official that the local’s activities had “cost the Company a lot of money.” Obviously, his avowal to “get even” with the union, expressed immediately thereafter, can have only one logical implication — that Allied Mechanical would take whatever opportunity was available to impose a financial burden on the coffers of the labor organization in return. Such an overt threat of retaliation, in conjunction with other evidence of Allied Mechanical’s dislike and mistreatment of Local 357, clearly was properly considered by the Board in ascertaining the true motivation of the company in bringing suit against Local 357, Local 7, and the locals’ international unions.
Second, the Board and unions pointed to the fact that Allied Mechanical brought suit against the unions for the exercise of protected activities as further evidence of the company’s improper motives. Allied Mechanical argued, however, that, even though protected conduct might be targeted in a lawsuit, no retaliatory motive can be presumed because “the employer’s motive may still reflect only a subjectively genuine desire to test the legality of the conduct” that the employer believed was unprotected. See BE & K Constr., 536 U.S. at 533, 122 S.Ct. 2390. But, in this *501 case, Allied Mechanical did not merely “test the legality of [otherwise protected] conduct.” The true motive for the company’s suit can be gleaned from the fact that, while ostensibly challenging the legitimacy of Local 7’s denial of job-targeting funds, Allied Mechanical’s complaint gratuitously mentioned that Local 357 “has filed numerous unfair labor practice charges and engaged in mini-strikes and other activities.” Those activities, clearly protected under the provisions of the NLRA and, in fact, the subject of some Board rulings in the union’s favor, were in no way germane to the gravamen of Allied Mechanical’s federal-court suit. The Board thus found that such references in the company’s complaint “demonstrated that [the] lawsuit was motivated by a desire to retaliate against the protected activity of Local 357 and employees it represented” for conduct completely unrelated to the basis of the court action. Allied Mech. Servs., Inc., 357 NLRB No. 101, 2011 WL 5374170, at *14 (2011).
The Board and the unions additionally relied on the objective baselessness of the suit to shed light on Allied Mechanical’s subjective intent. The company argued that such a consideration improperly conflates the two prongs of the BE & K Construction analysis by permitting the mere fact that the suit was objectively baseless to serve also as evidence for a finding that the company filed the suit with a retaliatory motive. If the objective baselessness of Allied Mechanical’s suit were the only indication of the company’s retaliatory motive, that argument would have more force. In this instance, however, additional considerations bolster the conclusion that the purpose in filing the suit was less than pure. In conjunction with the other bases already mentioned as support for the Board’s conclusion, the baselessness of the suit itself is in fact telling evidence of the motive behind its filing. As the NLRB argues in its appellate brief, “Common sense dictates that because the Company could have no realistic expectation of prevailing on the merits of its lawsuit, it must have filed the lawsuit for some other reason.” Br. of NLRB at 47. Stated differently:
[A] complete lack of any reasonable basis to expect success — as opposed to lack of success despite a reasonable basis — is undeniably relevant to motive. The fact that a litigant could not reasonably hope for — i.e., should have known he had no realistic chance of — success on the merits of his lawsuit necessarily undermines any argument that he sincerely sought relief through that lawsuit.
Br. of NLRB at 49 (citing Petrochem Insulation, 330 NLRB 47, 50 (1999), enforced, 240 F.3d 26 (D.C.Cir.2001)).
Without doubt, substantial evidence in the record supports the administrative determination that three articulated bases combined to provide irrefutable support for the proposition that Allied Mechanical’s suit against the unions was motivated by an improper, retaliatory objective. Not only does the record contain evidence of the company’s threats of retaliation and other anti-union animus and evidence of Allied Mechanical’s attempt to target protected activity that was not at issue in the dispute, but the utter lack of any reasonable basis to expect success in the suit betrays Allied Mechanical’s fraudulent intent.
Nevertheless, the majority somehow concludes that the record contains no evi-dentiary support “for the proposition that Allied Mechanical’s reasonably based suit was filed without regard to the merits and was instead only intended to cost the unions money.” (Emphasis added.) The only way such a conclusion can be reached is by beginning with the wholly untenable *502 position that Allied Mechanical’s suit was “reasonably based,” which under all the circumstances of this case is a premise supported only by fantasy. The Board correctly concluded that Allied Mechanical had absolutely no chance for success on the merits of the company’s claims. To argue that Allied Mechanical was merely seeking an extension of existing law by arguing that the local unions violated the NLRA’s secondary-boycott provisions completely ignores the plain meaning of the term “secondary boycott.” Furthermore, no evidence was adduced by Allied Mechanical to support its inclusion of the international unions as parties defendant, and it is inconceivable that the company reasonably could have believed that it could advance its breach-of-contract claims in light of the binding arbitral decision of the National Joint Adjustment Board that clearly interpreted the terms of the relevant contract.
In light of the majority’s determination that Allied Mechanical’s purpose in filing the suit against the unions was mere “hatred” and not based upon a retaliatory motive, I am constrained to believe that my colleagues would never find sufficient evidence of retaliation in any case, absent a direct statement from a company official that retaliation for exercise of protected rights was the actual basis for the suit. This record is replete with evidence that Allied Mechanical indeed harbored “hatred” for labor organizations. The majority has chosen not to notice, however, that the hatred that was proven spilled over into such vituperation that Allied Mechanical was willing to challenge at every turn the very bases of American labor law and take any action necessary to “get even with” the workers and their representatives merely because of the workers’ success on claims against Allied Mechanical that alleged repeated violations of the principles underlying protective labor legislation.
I am convinced beyond all doubt that Allied Mechanical’s lawsuit was both objectively baseless and subjectively motivated by an unlawful, retaliatory purpose. I thus would hold that the Board appropriately concluded that Allied Mechanical violated the provisions of 29 U.S.C. § 158(a)(1) by haling the local unions and their international organizations into court.
III. Deference Owed to Certain Administrative Findings
Brief mention must also be made regarding the majority’s effort to undermine the legitimacy of the NLRB and of administrative decision-makers in general by asserting that this court owes no deference whatever to findings of the Board that differ from the result that the majority would rather reach. According to the majority, “This is neither a case where the agency is in a better position to find facts, nor a situation where the NLRB’s expertise in labor relations or its special role as a primary source of labor policy serves as a basis for deference in fact finding.”
I agree that we as a court have a duty to protect the First Amendment rights of Allied Mechanical (and of Allied Mechanical’s employees). Given the deci-sional framework set up in the wake of the Supreme Court’s decision in BE & K Construction, we are also required to determine whether the claims advanced by Allied Mechanical were objectively baseless. I cannot subscribe, however, to the majority’s contention that the NLRB should be stripped of any meaningful role in this litigation.
As part of our analysis, we should examine whether Allied Mechanical acted with a retaliatory, anti-union animus in bringing suit against the labor organizations in 1998. In a case like this one, the Board is *503 in an unique position to examine the parties’ histories and evaluate whether actions undertaken by either party are motivated by “mere hatred” or by retaliation for past successes in vindicating workers’ rights. Of course, we are not compelled to accept the decision of the Board in all instances. When, however, substantial evidence in the record supports the conclusion of the administrative agency on an issue that requires examination of the motivation of a party, we should defer to that finding.
The majority opinion in this case seeks to upset the carefully crafted balance of responsibilities that characterizes judicial review of administrative determinations. For that reason, and because the majority unreasonably validates the baseless, blatantly anti-union, retaliatory allegations levied by Allied Mechanical against the local and international unions, I respectfully dissent from the majority’s decision and would enforce the well-reasoned order of the Board, while denying Allied Mechanical’s petition for review.